Jacob H. Nemon
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, NY 10005
Tel.: (212) 732-3200
Fax: (212) 732-3232
Email: nemon@clm.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

GLOBAL MERCHANT CASH, INC. d/b/a WALL       Case No. 1:23-cv-10756-JBF
STREET FUNDING,

                          Plaintiff,

              v.

MR. ELECTRIC LLC d/b/a MR. ELECTRIC OF THE
TRI CITIES and AVERY LUKE PENNINGTON,

                          Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO REMAND OR, IN THE ALTERNATIVE,
TO DISMISS DEFENDANTS' AFFIRMATIVE DEFENSES**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**................................................................................................................................ 1

**FACTS** ................................................................................................................................................ 3

   **I.**   **Procedural History**................................................................................................ 3

**ARGUMENT** ...................................................................................................................................... 5

   **I.**   **The Court Should Remand the Action to State Court** ........................................ 5

      *A.*   *The Notice of Removal was Untimely* ........................................................ 5

      *B.*   *The Complaint Triggered the 30-Day Removal Period* ........................... 7

   **II.**   **Alternatively, the Court Should Strike Defendants' Affirmative Defenses**................. 8

      *A.*   *Standard for Motion to Strike Affirmative Defenses* .................................. 8

      *B.*   *The Court Should Strike the First Affirmative Defense of Usury* .............................. 8

      *C.*   *The Court Should Strike the Remaining Affirmative Defenses* ................................ 17

**CONCLUSION** ................................................................................................................................ 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Thom Browne, Inc.*,
   629 F. Supp. 3d 213 (S.D.N.Y. 2022) ..................................................................... 17

*Amsterdam Capital Sols. LLC v. Taylor Mgmt. Servs. LLC*,
   2023 N.Y. Misc. LEXIS 2365 (Monroe Co. Sup. Ct. May 15, 2023) ..................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 8

*Barrier Grp. Inc. v. BMF Advance LLC*,
   2023 N.Y. Misc. LEXIS 1032 (Orange Co. Sup. Ct. Mar. 15, 2023) ............... 10, 14

*Bd. of Managers of the Landing at Dobbs Ferry Condo. v. Vill. of Dobbs Ferry*,
   2021 WL 2418467 (S.D.N.Y. June 14, 2021) ........................................................... 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 8

*Cash4Cases, Inc. v. Brunetti*,
   167 A.D.3d 448 (1st Dept. 2018) ............................................................................ 10

*Champion Auto Sales, LLC v. Pearl Beta Funding LLC*,
   159 A.D.3d 507 (1st Dept. 2018) ............................................................................ 10

*Cloudfund LLC v. Tamam Meat LLC*,
   2022 N.Y. Misc. LEXIS 4179 (Queens Co. Sup. Ct. Aug. 10, 2022) ..................... 16

*Colonial Funding Network, Inc. v. Davincitek Corp.*,
   2021 N.Y. Slip Op. 30026(U) (N.Y. Co. Sup. Ct. 2021) ......................................... 11

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
   749 F.3d 137 (2d Cir. 2014) ...................................................................................... 7

*De Sesto v. Slaine*,
   171 F. Supp. 3d 194 (S.D.N.Y. 2016) ..................................................................... 17

*Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*,
   2023 WL 3882697 (2d Cir. June 8, 2023) ....................................................... 2, 3, 10

*GEOMC Co. v. Calmare Therapeutics Inc.*,
   918 F.3d 92 (2d Cir. 2019) ................................................................................... 8, 17

ii

*Giventer v. Arnow*,
  37 N.Y.2d 305 (1975) ..................................................................................................9

*Glob. Merch. Cash, Inc. v. Builder's Innovation Grp.*,
  2023 U.S. Dist. LEXIS 216449 (E.D.N.Y. Dec. 5, 2023) ..........................................6

*IBIS Capital Group, LLC v. Four Paws Orlando LLC*,
  2017 WL 1065071 (Nassau Co. Sup. Ct. Mar. 10, 2017)...........................12, 15, 16

*Image Capital Partners LLC v. Be Clinical Inc.*,
  2022 N.Y. Misc. LEXIS 6037 (Monroe Co. Sup. Ct. Sep. 15, 2022) ....................16

*LG Funding, LLC v. United Senior Props. Of Olathe, LLC*,
  181 A.D.3d 664 (2d Dept. 2020) ........................................................................9, 10

*MCA Master Fund (MMF) v. Universal Scrap Motors Inc.*,
  2021 N.Y. Slip Op. 30097(U) (Nassau Co. Sup. Ct. Jan 14, 2021)........................14

*Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC*,
  2016 N.Y. Misc. LEXIS 4647 (Nassau Co. Sup. Ct. Nov. 4, 2016).......................14

*NewCo Capital Grp. VI LLC v. ERS Homes LLC*,
  2023 N.Y. Misc. LEXIS 1157 (Monroe Co. Sup. Ct. Mar. 22, 2023)..............14, 15

*NY Capital Asset Corp. v. F & B Fuel Oil Co., Inc.*,
  58 Misc. 3d 1229(A) (Westchester Co. Sup. Ct. Mar. 8, 2018) .............................14

*Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*,
  2023 WL 8003336 (E.D.N.Y. Nov. 17, 2023) (Block, J.)....................................9, 13

*Pearl Delta Funding, LLC v. Superior Contracting & Restoration, Inc.*,
  2022 N.Y. Misc. LEXIS 6038 (Nassau Co. Sup. Ct. Sep. 13, 2022).....................16

*Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*,
  943 F.3d 613 (2d Cir. 2019)......................................................................................6

*Pollas v. UPS, Inc.*,
  2022 U.S. Dist. LEXIS 213666 (S.D.N.Y. Nov. 28, 2022).......................................6

*Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*,
  2019 WL 1473090 (E.D.N.Y. Apr. 3, 2019) .......................................................9, 15

*Principis Capital, LLC v. I Do, Inc.*,
  201 A.D.3d 752 (2d Dept. 2022) .................................................................10, 15, 16

*Quicksilver Capital LLC v. Obioha*,
  2020 N.Y. Slip Op. 31321(U) (N.Y. Co. Sup. Ct. May 11, 2020) .........................12

iii

*Roopchand v. Mohammed*,
    154 A.D.3d 986 (2d Dept. 2017) ........................................................................9

*Samson MCA LLC v. Joseph A. Russo M.D. P.C.*,
    2022 N.Y. Misc. LEXIS 1127 (Ontario Co. Sup. Ct. Apr. 1, 2022).........................15

*Samson MCA LLC v. Joseph A. Russo M.D. P.C.*,
    219 A.D.3d 1126 (4th Dept. 2023) .................................................................10, 13

*SEC v. Rayat*,
    2021 WL 4868590 (S.D.N.Y. Oct. 18, 2021) ........................................................8

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
    2022 WL 4368114 (S.D.N.Y. Sept. 20, 2022), *sanctions granted,* 2023 WL
    5835748 (S.D.N.Y. Sept. 8, 2023) .......................................................9, 13, 15, 16

*US Info. Grp. LLC v. EBF Holdings, LLC*,
    2023 WL 6198803 (S.D.N.Y. Sept. 22, 2023)...............................................9, 10, 13

*Vernon Capital Grp. LLC v. Walnut Spring Farms L.L.C.*,
    2022 N.Y. Slip Op. 32731(U) (Kings Co. Sup. Ct. Aug. 12, 2022) .......................14

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001).................................................................................7

*Womack v. Capital Stack, LLC*,
    2019 WL 4142740 (S.D.N.Y. Aug. 30, 2019) .......................................................9

*Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*,
    2022 WL 1597541 (S.D.N.Y. May 19, 2022) ........................................................6

**Statutes**

28 U.S.C. § 1446(a) .....................................................................................................5, 6

28 U.S.C. § 1446(b) .....................................................................................................5, 6

28 U.S.C. § 1447(c) .....................................................................................................1, 5

**Rules**

Fed. R. Civ. Pro. 12(f)..................................................................................................1, 8

Fed. R. Civ. Pro. 9(b)....................................................................................................17

iv

## INTRODUCTION

Plaintiff Global Merchant Cash, Inc. ("Plaintiff") respectfully submits this Memorandum of Law in support of its motion for an Order (a) pursuant to 28 U.S.C. § 1447(c), remanding this action back to the Supreme Court of the State of New York, New York County ("State Court"), under Index No. 160913/2023, whence it was removed, or, in the alternative, (b) pursuant to Fed. R. Civ. Pro 12(f), striking the affirmative defenses of Defendants Mr. Electric LLC d/b/a Mr. Electric of the Tri Cities ("Mr. Electric") and Avery Luke Pennington ("Pennington"; together, "Defendants").

Remand is required where, as here, the Notice of Removal dated December 11, 2023 (Dkt. No. 1) ("Notice of Removal"),[1] was filed more than thirty days after receipt by counsel for Defendants Mr. Electric LLC d/b/a Mr. Electric of the Tri Cities ("Mr. Electric") and Avery Luke Pennington ("Pennington"; together, "Defendants") of the Complaint, which occurred no later than November 7, 2023, when David Kasell, Esq. made a written representation to Plaintiff's counsel that he represented Defendants in the State Court action, was aware of the Summons and Verified Complaint in the State Court on November 6, 2023 ("Complaint") and accepted service of the Complaint.[2]   The Notice of Removal was belatedly filed in order to avoid entry of a default judgment in State Court.

Alternatively, if the Court does not remand the action, the Court should strike the baseless and conclusory affirmative defenses set forth in Defendants' Answer dated December 12, 2023

---

[1] Attached to the Declaration of Jacob H. Nemon, Esq. ("Nemon Decl."), as Exh. 1.  Unless otherwise specified, "Exh. __" are to exhibits to the Nemon Decl.

[2] A copy of the Complaint as filed on November 6, 2023 is annexed to the Notice of Removal as Exh. A.  On November 8, 2023, at the direction of the New York County Clerk's Office, Plaintiff filed a corrected Complaint, a copy of which (together with its exhibits) is annexed to the Nemon Decl. as Exh. 2.

(Exh. 3) ("Answer").   The Complaint seeks enforcement of the Receivables Purchase Agreement dated June 5, 2023 (Exh. 2-A) ("Agreement"),[3] a written merchant cash advance ("MCA") agreement, whereby Mr. Electric sold to Plaintiff $163,200.00 of its receivables for the sum of $120,000.00, to be remitted to Plaintiff in weekly remittances initially at $3,400.00 (as a good faith estimate of the value of 10% of Mr. Electric's weekly receivables.  *See* Compl. ¶¶ 6-7.  Mr. Pennington guaranteed performance of the Agreement.  *Id.* ¶ 8.  After delivering a total of $61,200.00 to Plaintiff, Mr. Electric from June 4, 2023 through October 10, 2023 through weekly remittances, Mr. Electric defaulted under the Agreement by (i) blocking the weekly remittance on October 16, 2023 and further remittances thereafter, despite continuing business as usual, and (ii) filing an action falsely and frivolously asserting claims against Plaintiff for civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4]  *Id.* ¶¶ 12-16.

Defendants' primary affirmative defense, that the Agreement is void as usurious fails to state a plausible defense.  The Agreement is akin to the hundreds of MCA agreements that New York appellate and trial courts, as well as multiple district courts in the Southern District of New York, have determined are purchases of future receivables, not loans, and therefore not subject to New York's criminal usury law.  The Agreement meets the three-factor test for differentiating purchases of receivables from loans that was recently endorsed by the Second Circuit in *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023). The Answer provides no facts nor points to any allegations that distinguish this from every other garden

---

[3] Exh. 2-A.

[4] *See* Exh. 4 (Summons with Notice dated October 13, 2023, filed by Mr. Electric in *Mr. Electric, LLC v. Global Merchant Cash, Inc.¸* N.Y. Co. Index No. 655050/2023 ("Related Action")).

variety MCA collections case.  Therefore, the usury affirmative defense must be stricken as a matter of law.

The remaining affirmative defenses should be stricken because they are either predicated on Defendants' baseless usury defense or fail to plead enough facts to state a defense that is plausible on its face.

## FACTS

### I.      Procedural History

As indicated in the Notice of Removal, the action was commenced by Plaintiff's filing of the Complaint on November 6, 2023.  *See* Notice of Removal ¶ 5, Exh. A.  The copy of the Complaint annexed to the Notice of Removal bears a red header that reads, "CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)" and says "RECEIVED NYSCEF: 11/06/2023."  *Id.*  As the Court likely is aware, that is the header imprinted by the New York State Court Electronic Filing system ("NYSCEF") upon a plaintiff's filing of an action prior to the New York County Clerk's review and approval of the document and assignment of an index number.  Consequently, a party in possession of that document would have received a version downloaded prior to the County Clerk's issuance of an index number.

The Complaint clearly listed Plaintiff as "a New York domestic corporation with an address at 64 Beaver Street, Suite 415, New York, NY 10004," and listing each of Defendants as citizens of Tennessee with their address at 3201 Kimberly Ct., Suite 300-D6, Johnson City, Tennessee 37604."  Compl. ¶¶ 1-3.  Furthermore, the amount in controversy was clearly stated as $121,002.40.  *Id.* ¶ 21.

It is clear that Mr. Kasell, counsel for Defendants, had obtained that copy of the Complaint, had notice of the filing of the State Court action, by November 7, 2023 (the day after the Complaint was filed) at 10:25 AM, and accepted service on Defendants' behalf.  At that time, Mr. Kasell

3

emailed counsel for Plaintiff, under the subject line "Mr. Electric LLC d/b/a Mr. Electric of the Tri Cities and Avery Luke Pennington," with the following:

> Mr. Nemon,
>
> We noticed that your represent the plaintiff in Global Merchant Cash Inc. v. Mr. Electric LLC d/b/a Mr. Electric of the Tri Cities and Avery Luke Pennington in the action initiated yesterday?
>
> On behalf of Mr. Electric and Mr. Pennington, we are authorized to accept service.  Could you send over a stipulation and we will execute it?
>
> David Kasell

Exh. 5.[5]

No index number was issued in the State Court action until at least November 8, 2023, after the New York County Clerk initially rejected the filing of the Complaint and directed Plaintiff to refile it.  Nemon Aff., Exh. 6.  A corrected version of the Complaint was actually filed on November 8, 2023 (although it was not attached by Defendants to the Notice of Removal, it was a part of the State Court record).  Exh. 2.

On November 8, 2023, Plaintiff's counsel sent to Mr. Kassell a proposed stipulation in which Mr. Kasell was to represent "that he has obtained express authorization from Defendants … to represent them in this matter and to accept service of the Summons and Verified Complaint … on Defendants' behalf and waive jurisdictional defenses," and stipulated (1) "Defendants acknowledge service of the Complaint and waive all jurisdictional defenses" and (2) "Defendants shall answer, move or otherwise respond to the Complaint within 20 days of execution of this Stipulation."  Exhs. 5 and 7.  Mr. Kasell actually executed this stipulation, dating it November 10,

---

[5] Indeed, Mr. Kasell was already counsel of record for Mr. Electric in the Related Action, wherein he filed a Summons with Notice against Plaintiff, which listed Plaintiff's address as "Global Merchant Cash Inc., 64 Beaver Street Suite, #415, New York, NY 10004."  Exh. 4.

4

2023 (*id.*), but it is clear from his earlier email that he represented Defendants and accepted service as of November 7, 2023.

Defendants failed to answer, move or otherwise respond to the Complaint within 20 days of November 10, 2023, prompting Plaintiff to make an application in the State Court for a default judgment.  Exh. 8.

The Notice of Removal was filed on December 11, 2023, more than 30 days after Mr. Kasell's initial email.  Exh. 1.  The deadline to remove from State Court expired on Thursday, December 7, 2023.

## ARGUMENT
### I.   The Court Should Remand the Action to State Court
#### A.  *The Notice of Removal was Untimely*

This is a timely motion to remand to the State Court, made within 30 days of the filing of the Notice of Removal on December 11, 2023.  *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

The Notice of Removal was untimely filed on December 11, 2023.  Exh. 1.  "The notice of removal of a civil action or proceeding shall be filed *within 30 days after the receipt* by the defendant, through service *or otherwise*, of *a copy of the initial pleading* setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, *whichever period is shorter*."  28 U.S.C. § 1446(b)(1) (emphases supplied).

Actual receipt of the complaint by the defendants through formal service of process on the defendants is not needed to trigger the 30-day removal period, where it is received by the

defendants' attorney who has appeared in the action. "Receipt of the initial pleadings by the defendant's attorney triggers the 30-day removal period under § 1446(b)." *Yih v. Taiwan Semiconductor Mfg. Co., Ltd.*, 2022 WL 1597541, at *4 (S.D.N.Y. May 19, 2022) (citing cases). Indeed, receipt by the attorney constitutes notice to the client. *Id.* Just last week, one court granted Plaintiff's similar motion to remand to state court where the defendants' counsel had appeared in the state court action and received a copy of a paper indicating the removability of the case by March 24, 2023, but failed to file a notice of removal until more than 30 days later on May 2, 2023. *See Glob. Merch. Cash, Inc. v. Builder's Innovation Grp.*, 2023 U.S. Dist. LEXIS 216449, at *5-7 (E.D.N.Y. Dec. 5, 2023). Indeed, 28 U.S.C. § 1446(b)(1)'s employment of the language "within 30 days after the receipt by the defendant, through service *or otherwise*," indicates that any means of receipt by the defendant is sufficient to trigger the 30 day period. *See generally Pollas v. UPS, Inc.*, 2022 U.S. Dist. LEXIS 213666, at *2 (S.D.N.Y. Nov. 28, 2022) (case remanded where notice of removal only alleged it was filed within thirty days after service but failed to allege "when Defendant actually received, 'through service or otherwise,' a copy of the initial pleading."). Moreover, the statutory language, "whichever period is shorter," and the requirement to construe the removal statute narrowly, clearly evidence a congressional intent to require the Court to abide by the shortest possible period.

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (citation omitted). "A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence." *Id.* at 618.

Here, December 11, 2023, the date of the Notice of Removal, is more than 30 days after Mr. Kasell clearly received the filing of the Complaint and appeared for Defendants, as evidenced by his November 7, 2023 email.  Thus, Defendants' thirty days to remove the action to this Court expired no later than December 7, 2023.  Even *arguendo* if the time to remove commenced upon the filing of the corrected Complaint on November 8, 2023, the removal time expired on December 8, 2023.

### B.  *The Complaint Triggered the 30-Day Removal Period*

The Complaint indisputably "provides facts explicitly establishing removability or alleges sufficient information for the defendant to ascertain removability."  *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-206 (2d Cir. 2001) (the defendant is required to "apply a reasonable amount of intelligence in ascertaining removability" based on what is stated on the face of the initial pleading); *Bd. of Managers of the Landing at Dobbs Ferry Condo. v. Vill. of Dobbs Ferry*, 2021 WL 2418467, at *1 (S.D.N.Y. June 14, 2021) (granting remand where defendants were provided "information from which defendant[s] could have intelligently ascertained removability.").  "A pleading enables a defendant to intelligently ascertain removability when it provides 'the necessary facts to support [the] removal petition.' In cases where removal is based upon diversity, the facts required to support the removal petition include the amount in controversy and the address of each party."  *Whitaker*, 261 F.3d at 206 (citation omitted).

Here, the version of the Complaint annexed to the Notice of Removal and the corrected Complaint, explicitly provide facts from which this case's removability could have been gleaned. The Complaint listed Plaintiff as "a New York domestic corporation with an address at 64 Beaver Street, Suite 415, New York, NY 10004," and listing each of Defendants as citizens of Tennessee

11251493.4

with their address at 3201 Kimberly Ct., Suite 300-D6, Johnson City, Tennessee 37604."  Compl.

¶¶ 1-3.  Furthermore, the amount in controversy was clearly stated as $121,002.40.  *Id.* ¶ 21.

Accordingly, this action should be remanded to the State Court.

## II.  **Alternatively, the Court Should Strike Defendants' Affirmative Defenses**
### A.  *Standard for Motion to Strike Affirmative Defenses*

Fed. R. Civ. P. 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Second Circuit has held that on a motion to strike an affirmative defense courts must apply the plausibility standard for motions to dismiss pleadings set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019) ("the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task.").  "[A]n affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* at 98.  "To succeed on a motion to strike an affirmative defense, 'a plaintiff must show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'"  *SEC v. Rayat*, 2021 WL 4868590, at *2 (S.D.N.Y. Oct. 18, 2021) (quoting *GEOMC.*, 918 F.3d at 96).

### B.  *The Court Should Strike the First Affirmative Defense of Usury*

There is no question of fact or law that would allow the usury defense to succeed, since the Agreement on its face is an enforceable MCA agreement, not a loan, and Plaintiff will be prejudiced by inclusion of the defense by having to go through discovery and trial on an issue not

8

subject to reasonable factual dispute.  MCA agreements have been repeatedly construed as *non-*loans by other district court judges.  *See, e.g.*, *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (Karas, J.) ("the Court joins an ever-growing group of courts that have held that nearly identical agreements … [are] not a usurious loan.") ("*Streamlined I*"), *sanctions granted,* 2023 WL 5835748, at *11–12 (S.D.N.Y. Sept. 8, 2023) ("*Streamlined II*"); *US Info. Grp. LLC v. EBF Holdings, LLC*, 2023 WL 6198803, at *7 (S.D.N.Y. Sept. 22, 2023) (Castel, J.) ("the Complaint does not plausibly allege facts that, if accepted as true, would tend to show that the two Agreements were loans, as opposed to MCAs."); *Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*, 2023 WL 8003336, at *2 (E.D.N.Y. Nov. 17, 2023) (Block, J.) (denying merchant motion to dismiss on usury grounds); *Womack v. Capital Stack, LLC*, 2019 WL 4142740, at *7 (S.D.N.Y. Aug. 30, 2019) (Carter, J.) (dismissing merchant's affirmative usury claim); *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *4–6(E.D.N.Y. Apr. 3, 2019) (Hurley, J.) (same).  There are simply no facts alleged in Defendants' usury defense to set this case apart.

Indeed, two well-established principles of New York jurisprudence *preclude* a finding of usury: (1) the strong presumption *against* usury, and (2) a transaction cannot be usurious if it is not a loan.  First, there is a strong presumption against a finding of usury, and a party claiming usury bears the heavy burden of proving it by clear and convincing evidence.  *Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975); *Roopchand v. Mohammed*, 154 A.D.3d 986, 988 (2d Dept. 2017).  Second, "[i]f the transaction is not a loan, there can be no usury, *however unconscionable the contract may be*."  *LG Funding, LLC v. United Senior Props. Of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020) (emphasis supplied).  "To constitute a loan, the agreement must provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished

from being put in hazard." *Cash4Cases, Inc. v. Brunetti*, 167 A.D.3d 448, 449 (1st Dept. 2018). "Loans generally consist of a face value that must be repaid with interest over a specific finite time period." *Barrier Grp. Inc. v. BMF Advance LLC*, 2023 N.Y. Misc. LEXIS 1032, at *21 (Orange Co. Sup. Ct. Mar. 15, 2023) (citation omitted).

New York appellate courts agree that an MCA agreement is not generally a loan because it is a purchase of receivables. *Samson MCA LLC v. Joseph A. Russo M.D. P.C.*, 219 A.D.3d 1126, 1128 (4th Dept. 2023); *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754-55 (2d Dept. 2022); *Champion Auto Sales, LLC v. Pearl Beta Funding LLC*, 159 A.D.3d 507 (1st Dept. 2018). In reviewing whether an MCA agreement is a true purchase of receivables, New York courts apply a three-factor test:

> The court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.

*Principis Capital*, 201 A.D.3d at 754 (quoting *LG Funding, LLC v. United Senior Props. Of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2022). The Second Circuit recently endorsed the *Principis* test as the sole factors for determining whether an MCA agreement is a loan transaction or purchase of receivables. *Fleetwood Servs.*, 2023 WL 3882697, at *2; *accord US Info. Grp.*, 2023 WL 6198803, at *6 (dismissing RICO action where agreement complied with three factors). Where all three factors are present, an agreement is an MCA agreement not subject to usury laws. *Principis Capital*, 201 A.D.3d at 754 (granting summary judgment to funder).

Not only does the Agreement here meet each of these factors (as set forth below), but it has an explicit provision describing the nature of the transaction as not being a loan but a *bona fide*

purchase of receivables, which would require no payment in the event no receivables are generated

by the merchant, and in which no interest accrues:

> **Nature of Transaction**. THIS IS NOT A LOAN. **Merchant is selling a portion of its future revenue stream and rights to payment to GMC at a discount, on a nonrecourse basis, and is not borrowing money from GMC. There is no interest rate or fixed payment schedule and no time period during which the Purchased Receipts must be collected, or the Purchased Receipts Amount realized by GMC.** Absent a written modification between the parties, and absent an Event of Default under Article III, **the total amount paid by Merchant to GMC will never exceed the Purchased Receipts Amounts (plus any applicable fees as set forth in this Agreement). If future Receipts are remitted more slowly than GMC may have anticipated or projected or if the full Purchased Receipts Amount is never received by GMC due to adverse changes to or the termination of Merchant's business or otherwise, and Merchant has not breached this Agreement, Merchant would not owe anything to GMC and would not be in breach of, or default under, this Agreement.** GMC is buying the Purchased Receipts knowing the risks that Merchant's business may not perform as expected, go bankrupt or fail, and GMC assumes these risks based on Merchant's representations, warranties and covenants in this Agreement and the financial and business information previously provided by Merchant. By this Agreement, Merchant transfers to GMC full and complete ownership of the Purchased Receipts as they are created or received, and Merchant retains no legal or equitable interest therein. **Remittances made to GMC in respect of the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the remittances therefor by or on behalf of Merchant's customers.** GMC is a bona fide purchaser of the Purchased Receipts Amount for fair value. Merchant agrees that the Purchase Price equals the fair market value for the risk undertaken by GMC in consideration for the Purchased Amount of Merchant's Receipts. … Merchant agrees that it will treat the amounts received and the Purchased Receipts delivered to GMC under this Agreement in a manner consistent with a sale in its accounting records and tax returns. … Because the parties acknowledge and rely upon the lawfulness of this transaction under the laws of the State of New York and the fairness of its terms, Merchant knowingly and willingly waives and is estopped from asserting any claim or defense of usury in any legal action or proceeding, whether based on New York law or the law of any other jurisdiction.

Exh. B-2 § 1.7 (emphases supplied).  Courts have found that the parties stipulation that an MCA

agreement was not a loan was dispositive.  *See, e.g.*, *Colonial Funding Network, Inc. v. Davincitek*

*Corp.*, 2021 N.Y. Slip Op. 30026(U), ¶ 13 (N.Y. Co. Sup. Ct. 2021).  Defendants completely

ignore the terms of the Agreement and the fact that New York courts have repeatedly found

11

identical or materially similar contracts were true purchases of receivables upon application of the three-factor test, and merely assert a conclusory allegations of usury.

### i.     The Agreement Contains a Mandatory Reconciliation Provision

An MCA agreement is not a loan even if it contains a fixed daily remittance as an estimate of a specified percentage of daily receivables where "the Agreement provided no liability in the event that the seller's business failed because it could not generate sufficient revenue to continue operating."  *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 WL 1065071, at *3 (Nassau Co. Sup. Ct. Mar. 10, 2017).  The fixed amount can be adjusted through a reconciliation provision, which allows the merchant to request a reduction of the remittance amounts to reflect diminutions of its receivables.  *Quicksilver Capital LLC v. Obioha*, 2020 N.Y. Slip Op. 31321(U), ¶¶ 7-8 (N.Y. Co. Sup. Ct. May 11, 2020) ("[t]he agreement contains a reconciliation provision … provid[ing] that plaintiff is to collect future receivables based on amounts collected by defendant during a particular calendar month. If defendant is not in default, she may once each calendar month request that plaintiff reconcile the [monthly amount to be paid by defendant] to more closely reflect defendant's actual future receipts times the purchased percentage.").  Here, such a provision is clearly contained at paragraph 1.14 of the Agreement:

1. The Specific Amount is derived from an estimate of the Specified Percentage of Merchant's expected future Receipts for each calendar month. …  Additionally, if Merchant has not defaulted under this Agreement, Merchant may request that GMC reconcile Merchant's actual receipts and adjust the Specific Amount so that the amount received by GMC in the future more closely represents the Specified Percentage of future Receipts. In the event that Merchant desires a reconciliation, it shall be Merchant's sole responsibility to request it in accordance with subparagraph 2 hereof. **Upon receipt of a proper written reconciliation request from Merchant that requires a reconciliation, GMC _shall_ be required to provide the reconciliation within 5 business days, with retroactive effect as of the date the request is received by GMC.**
2. Merchant may request a reconciliation by sending GMC a request in writing, including by email, and including a copy of Merchant's most recent bank statements or credit card statements (which statements shall also include the

Merchant's bank account report showing transactions in the month to date), as well as any receivables reports maintained by Merchant. Upon receipt of a written reconciliation request from Merchant, GMC may request any and all financial information from Merchant that GMC reasonably believes is necessary to accurately reconcile the amount GMC has received from Merchant with the actual Specified Percentage. GMC shall not be required to adjust the Specific Amount until such time as it has received all such requested information. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Specific Amount until any subsequent adjustment.

3.   ***

4.   **If a reconciliation is required, GMC _shall_ modify the Specific Amount such that the modified Specific Amount is a good faith approximation by GMC of the (a) Specified Percentage, multiplied by (b) the gross revenues of Merchant during the previous two weeks, divided by (c) either ten for a daily Specific Amount (_i.e._, the number of weekdays in the previous two weeks), or by two for a weekly Specific Amount (_i.e._, the number of weeks). The reconciliation _shall_ be made within five business days of Merchant's request and provision of the financial information and shall be effective as of the date of the notice.** Any reconciliation may substantially extend the duration of this Agreement. Nothing set forth in this Section shall be deemed to provide Merchant with the right to interfere with GMC's right and ability to debit the Account while the request is pending.

Exh. B-2 (emphases supplied).  These is not an illusory reconciliation provision, but a mandatory one, since it uses the term "shall."  *See Streamlined I*, 2022 WL 4368114, at *4 ("the Funding Agreement includes a reconciliation provision, which—contrary to Plaintiffs' baseless argument in opposition—provides that reconciliation is mandatory if requested by Streamlined Consultants[,]" since it provided … Within four business days … [funder] *shall* reconcile …");[6] *US Info. Grp.*, 2023 WL 6198803, at *7 (mandatory reconciliation clause where it "provides that Everest may request reasonable documentation, and that within four business days, Everest 'shall reconcile Seller's actual receipts.'"); *Pearl Delta*, 2023 WL 8003336, at *2 ("This

---

[6] *Streamlined I*, a federal district court decision, was cited with approval by the New York Appellate Division in *Samson MCA*,  219 A.D.3d at 1128.

Reconciliation Clause grants the withdrawing party no such discretion and instead provides for a mandatory decrease in the withdrawal amount if certain other conditions are met.").[7]

### ii.    The Agreement Contains Has No Fixed Duration

"An agreement for purchase of future receivables has a 'non-finite term' because the time to complete the transaction contemplated by the agreement is contingent on an outside factor, which is customers shopping and paying the merchant for products or services which creates receivables that are available to be collected by the purchaser." *Barrier Grp.*, 2023 N.Y. Misc. LEXIS 1032, at *21; *accord Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC*, 2016 N.Y. Misc. LEXIS 4647, *7-8 (Nassau Co. Sup. Ct. Nov. 4, 2016) (MCA agreement not loan where funder assumed "the risk that, if the receipts were less than anticipated, the period of repayment would be correspondingly longer, and the investment would yield a correspondingly lower annual return."). An MCA is not a loan where "it has an 'indefinite term' and remains in effect until [the merchant's] obligations are 'fully satisfied,'" because "[t]he indefiniteness of the Agreement supports the contention that it is contingency based and not absolute." *MCA Master Fund (MMF) v. Universal Scrap Motors Inc.*, 2021 N.Y. Slip Op. 30097(U), ¶ 4 (Nassau Co. Sup. Ct. Jan 14, 2021); *see NY Capital Asset Corp. v. F & B Fuel Oil Co., Inc.*, 58 Misc. 3d 1229(A) (Westchester Co. Sup. Ct. Mar. 8, 2018) ("the time span for plaintiff's collection of a percentage of defendants' sales proceeds is contingent upon defendants actually generating sales and those sales resulting in the collection of revenue. As such, the agreement has an indefinite term, evidencing the contingent nature of the repayment plan."). An agreement providing it "remains in force until the purchased

---

[7] *Accord Amsterdam Capital Sols. LLC v. Taylor Mgmt. Servs. LLC*, 2023 N.Y. Misc. LEXIS 2365, at *4 (Monroe Co. Sup. Ct. May 15, 2023); *NewCo Capital Grp. VI LLC v. ERS Homes LLC*, 2023 N.Y. Misc. LEXIS 1157, at *7 (Monroe Co. Sup. Ct. Mar. 22, 2023); *Vernon Capital Grp. LLC v. Walnut Spring Farms L.L.C.*, 2022 N.Y. Slip Op. 32731(U) (Kings Co. Sup. Ct. Aug. 12, 2022).

14

amount and other amounts due are received by" the funder is consistent with this requirement.
*NewCo Capital*, 2023 N.Y. Misc. LEXIS 1157, at *7-8.

Here, the Agreement has an indefinite term, contains a reconciliation provision that enables
the merchant to extend out its duration indefinitely, and specifically provides, "[t]here is no interest
rate or fixed payment schedule and no time period during which the Purchased Receipts must be
collected, or the Purchased Receipts Amount realized by GMC." Exh. B-2 § 1.7; *see Samson MCA
LLC v. Joseph A. Russo M.D. P.C.*, 2022 N.Y. Misc. LEXIS 1127, at *10 (Ontario Co. Sup. Ct.
Apr. 1, 2022) ("The agreements also do not provide for a finite term, providing instead that the
agreement remains in force until the purchased amount and other amounts due are received by
Plaintiff.  See Agreements, at §1.2."); *Streamlined I*, *Streamlined I*, 2022 WL 4368114, at *5
(indefinite term where the funding agreement stated "[t]here is . . . no payment schedule and no
time period during which the [p]urchased [a]mount must be collected by" the funder).  Moreover,
the contracts could potentially be extended over an indefinite duration because they were subject
to regular adjustment under the reconciliation provision. *Principis Capital*, 201 A.D.3d at 754
("Concomitantly, as the amount of the monthly payments could change, the term of the agreement
was not finite.").

Moreover, the Agreement provides "[r]emittances made to GMC in respect of the full
amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and
the remittances therefor by or on behalf of Merchant's customers." Exh. B-2 § 1.7.  This is
consistent with a purchase of receivables where the durations are "contingent upon [the
merchant's] actually generating sales and those sales actually resulting in the collection of
revenue." *IBIS Capital*, 2017 WL 1065071, at *3; *Power Up Lending Grp.*, 2019 WL 1473090,
at *5 ("[T]he term in the Agreement is indefinite because…every time Defendants' receipts change

the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid"). "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Ibis Capital*, 2017 WL 1065071, at *3.

### iii.    Bankruptcy is Not an Event of Default

An MCA agreement is not a loan where not only do "[t]he default provisions of the agreement do not make a bankruptcy filing an event of the default," but, like here, "[a] bankruptcy filing is expressly not an event of default under the contract, and thus that factor also weighs in favor of the plaintiff." *Cloudfund LLC v. Tamam Meat LLC*, 2022 N.Y. Misc. LEXIS 4179, at *4-5 (Queens Co. Sup. Ct. Aug. 10, 2022); *see Principis Capital*, 201 A.D.3d at 754 (not a loan where "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default"). Not only is bankruptcy not listed as an "Event of Default" under ¶ 3.1 of the Agreement, but it specifically provides, "GMC is buying the Purchased Receipts knowing the risks that Merchant's business may not perform as expected, go bankrupt or fail …" Exh. B-2 § 1.7. One district court recently found similar language militated against finding a loan. *Streamlined I*, 2022 WL 4368114, at *5.[8]

---

[8] Indeed, an MCA is not a loan where, like here, it "acknowledges that bankruptcy by Defendants would not constitute a breach." *Image Capital Partners LLC v. Be Clinical Inc.*, 2022 N.Y. Misc. LEXIS 6037, at *9 (Monroe Co. Sup. Ct. Sep. 15, 2022); *accord Pearl Delta Funding, LLC v. Superior Contracting & Restoration, Inc.*, 2022 N.Y. Misc. LEXIS 6038, at *4-5 (Nassau Co. Sup. Ct. Sep. 13, 2022) (not a loan where "bankruptcy and business failure are not events of default. Rather, the Agreement expressly provides that 'Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself will not constitute a breach of this Agreement. [Funder] is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and [funder] assumes these risks ...'").

16

### C.  *The Court Should Strike the Remaining Affirmative Defenses*

The remaining affirmative defenses should each be stricken as conclusory and unsupported by factual allegations.  Indeed, to survive a motion to strike, "[a] defendant must [] support an affirmative defense with 'some factual allegations to make them plausible.'"  *Adidas Am., Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 219-20 (S.D.N.Y. 2022) (quoting *GEOMC*, 918 F.3d at 99).

First, Defendants provide no factual basis for their conclusory second affirmative defense that plaintiff has imposed excessive fees, interest and unnecessary costs or fifth affirmative defense of improper calculation of amounts.  To the extent these are based upon their usury argument, they fail for the reasons set forth above.  Moreover, the Complaint attached a copy of the Agreement showing an obligation to deliver $163,200.00 in receivables in exchange for a purchase price of $120,000.00 (Exh. 2-A), and a remittance history showing a total of $61,200.00 of weekly remittances (*id.*, Exh. 2-B), and also laid out the additional NSF fees, stop payment fees, and liquidates damages allowed for under the express terms of the Agreement.  *See* Compl. ¶¶ 18-20. Defendants do not specify which of these fees is "excessive" or improperly calculated.  Therefore, there is no plausible defense stated.

Second, Defendants third affirmative defense of fraudulent, deceptive or misleading conduct fails on its face because it is not pleaded with particularity. "[A]ffirmative defenses alleging fraud must be pled with particularity as required by Rule 9(b), or be struck as inadequately pled." *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 205 (S.D.N.Y. 2016).  Here, there are simply no facts pleaded to support an affirmative defense of fraud.

Third, Defendants fail to plead any facts to support their fourth affirmative defense of lack of standing.  This is an action to enforce the Agreement, to which Plaintiff is the original funder

17

and which has actually received remittances of Mr. Electric's receivables since the Agreement was entered, and there is no allegation anywhere in the record that the Agreement has been assigned by Plaintiff. The notion that Plaintiff lacks standing is utterly implausible on the facts before the Court.

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting a remand to State Court, or, in the alternative, dismissing Defendants' counterclaims, together with granting Plaintiff all such other and further relief as is just and equitable.

Dated: December 13, 2023

CARTER LEDYARD & MILBURN LLP

By:  */s/ Jacob H. Nemon*
      Jacob H. Nemon
28 Liberty Street, 41st Floor
New York, NY 10005
Tel.:   (212) 732-3200
Fax:   (212) 732-3232
Email: nemon@clm.com

*Attorneys for Plaintiff*

18